JUDGE GRIESA

**13 CIV 1666**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DANIEL RAVICHER, | ECF CASE |
| Plaintiff, | |
| v. | CASE NO. ____ |
| CARL C. ICAHN, | **COMPLAINT** |
| Defendant. | |



Plaintiff Daniel Ravicher alleges, upon knowledge as to self and upon information and below as to others, against Defendant Carl C. Icahn as follows:

## OVERVIEW

1.  Defendant is aiding and abetting one of the largest frauds in history by publicly promoting and propping up the share price of Herbalife Ltd. ("HLF") after knowing that HLF is an illegal pyramid scheme. Defendant's conduct is motivated solely by a desire to exact revenge on a former business partner that successfully sued Defendant for breaching an agreement between them many years ago and that is now publicly known to have a substantial investment in a short position in HLF. Defendant's conduct is illegal and causing injury to Plaintiff who also has a substantial investment in a short position in HLF. Plaintiff brings this action against Defendant for damages, to enjoin any further aiding and abetting of the HLF fraud, and to order Defendant to divest himself of all shares of HLF acquired during the period of Defendant's illegal conduct.

## PARTIES

2.  Plaintiff is a citizen of the great state of Florida. Plaintiff has had and continues to have a substantial investment in a short position in HLF.

3.  Defendant is a citizen of New York and the manager of various private investment

funds.

## JURISDICTION AND VENUE

4.　The Court has jurisdiction over the claim asserted herein pursuant to 28 U.S.C. § 1332 because complete diversity exists between Plaintiff and Defendant and the amount in controversy exceeds $75,000.

5.　The Court has jurisdiction over Defendant because he is a citizen of New York.

6.　Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant resides in this District and defendant regularly conducts business in this District.

## SUBSTANTIVE ALLEGATIONS

### *Herbalife's Fraudulent Pyramid Scheme*

7.　Herbalife Ltd. ("HLF") describes itself as "a network marketing company [that] sells weight management, healthy meals and snacks, sports and fitness, energy and targeted nutritional products, and personal care products worldwide." In truth, HLF is a fraudulent pyramid scheme because it has a compensation program based primarily on providing payments to participants for the recruitment of new participants, not on the retail sale of products or services.

8.　As described by the Ninth Circuit:

> Pyramid schemes are said to be inherently fraudulent because they must eventually collapse. *See, e.g., S.E.C. v. International Loan Network, Inc.*, 968 F.2d 1304, 1309 (D.C.Cir. 1992). Like chain letters, pyramid schemes may make money for those at the top of the chain or pyramid, but "must end up disappointing those at the bottom who can find no recruits." *In re Koscot Interplanetary, Inc.*, 86 F.T.C. 1106, 1181 (1975), *aff'd mem. sub nom., Turner v. F.T.C.*, 580 F.2d 701 (D.C.Cir.1978).

> The Federal Trade Commission has established a test for determining what constitutes a pyramid scheme. Such contrivances
>
>> are characterized by the payment by participants of money to the company in return for which they receive (1) the right to sell a product and (2) the right to receive in return for recruiting other participants into the program rewards which are unrelated to sale of the product to ultimate users.
>
> *Id.* (emphasis in original). The satisfaction of the second element of the *Koscot* test is the *sine qua non* of a pyramid scheme: "As is apparent, the presence of this second element, recruitment with rewards unrelated to product sales, is nothing more than an elaborate chain letter device in which individuals who pay a valuable consideration with the expectation of recouping it to some degree via recruitment are bound to be disappointed." *Id.* We adopt the *Koscot* standard here and hold that the operation of a pyramid scheme constitutes fraud for purposes of several federal antifraud statutes.

*Webster v. Omnitrition Intern., Inc.*, 79 F. 3d 776, 781-82 (9th Cir 1996).

9. With respect to HLF specifically, a California court found in 2009 that, "Herbalife's entire business model appears to incentivize primarily the payment of compensation that is 'facially unrelated to the sale of product to the ultimate users' because it is paid based on the suggested retail price of the amount ordered [from Herbalife], rather than based on actual sales to consumers.'" *Herbalife v. Ford*, Memorandum & Order Regarding Cross-Motions for Summary Judgment, No. CV 07-02529, slip op. at 16 (C.D. Cal. Aug. 25, 2009). Thus, this factual finding by the California state court satisfies the Ninth Circuit's description of a pyramid scheme, meaning HLF is indeed, without question, a fraud.

10. HLF has also been found to be a pyramid by a Belgian court. Plaintiff is aware of no case where HLF has been found to not be a pyramid scheme and HLF has not produced any independent attorney opinion on the issue. Instead, HLF uses misleading, scientifically unsound reports by hired-gun experts who are not attorneys to distract and confuse the public regarding

the legality of its business model.

11. In short, HLF's pyramid scheme constitutes a fraud in violation of federal law, including Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), § 12(2) of the Securities Act of 1933, § 10 of the Securities Exchange Act of 1934 and/or various RICO predicate acts, amongst others. HLF's business also violates various state and international laws.

### *Defendant's Aiding and Abetting the Herbalife Fraud*

12. A party is guilty of aiding and abetting a fraud if (1) there is a fraud, (2) the party has knowledge of the fraud, and (3) the party provides substantial assistance to advance the fraud's commission. The knowledge requirement of an aiding and abetting fraud claim is satisfied by actual knowledge of the underlying fraud. A party provides "substantial assistance" to advance of a fraud's commission if it affirmatively assists, helps conceal, or by virtue of failing to act when required to do so enables the fraud to proceed.

13. Defendant is guilty of aiding and abetting the HLF fraud because (1) HLF is a fraud, (2) Defendant has publicly conceded that he has actual knowledge of HLF's fraudulent activities, and (3) Defendant continues to provide "substantial assistance" to the HLF fraud through publicly promoting and propping up the share price of HLF.

14. Defendant has conceded on several occasions that he has actual knowledge of HLF's business. For example, Defendant was quoted in a February 28, 2013, HLF issued press release as saying, "We conducted considerable research on Herbalife and its business." Therefore, Defendant, by his own admission, must be aware of the same facts about HLF's business as set forth in the above court decisions, which found that HLF's business satisfies the

definition of an illegal pyramid scheme. Indeed, Defendant must not only have actual knowledge of the actions of HLF that constitute illegal fraud, but if he truly has "conducted considerable research" on HLF, then he must also be aware of those specific cases themselves. Thus, Defendant not only has actual knowledge of the fraud, he also has actual knowledge that the fraud has been found to meet the definition of a fraud by the courts.

15.     Defendant has provided substantial assistance to the HLF fraud in at least two ways. First, Defendant has provided substantial assistance to the HLF fraud by publicly promoting HLF in the media. Second, Defendant has provided substantial assistance to the HLF fraud by propping up the HLF share price by making substantial purchases of HLF shares and options.

16.     With respect to the substantial assistance provided by Defendant to the HLF fraud through public promotion, Defendant has purposefully sought out and taken advantage of opportunities given to him by the media, including the national television networks CNBC and Bloomberg Television, to mislead the public into believing that HLF is not a fraud. Defendant has used his unique reputation and stature as a successful investor to influence public perception without providing any substance behind his pumping statements. For example, Defendant has told the public that he has spoken with his attorney about HLF, but that attorney has never been identified and has never publicly provided an opinion on whether HLF is a fraud.

17.     Defendant has also allowed HLF to quote him in their statements to the press. For example, in a press release issued February 28, 2013, titled, "Herbalife to Increase the Size of Its Board of Directors and Nominate Two Icahn Representatives for Election to Board", Defendant

is quoted as saying:

> "Over its long history, Herbalife has proven its ability to increase revenues and returns, and we will work with the Company to build on its results," said Mr. Icahn. "We conducted considerable research on Herbalife and its business before making our investment in the Company, and have great respect for its Board and management team, and believe in the Company's great potential. We expect our shareholder representatives to provide positive input into Board decisions affecting the future of the Company."

By publicly promoting HLF through media appearances and by allowing HLF to quote him in their press releases, Defendant has provided the HLF fraud substantial assistance due to his unique ability to influence market perception.

18. With respect to the substantial assistance provided by Defendant to the HLF fraud through propping up its share price, on February 14, 2013, Defendant filed with the Securities and Exchange Commission a Schedule 13D disclosing that he and various entities he controls recently became the beneficial owner of, in the aggregate, 14,015,151 Shares (including Shares underlying call options) of HLF, with an aggregate purchase price of approximately $214.1 million. By publicly disclosing his purchases of HLF stock, Defendant has knowingly communicated to the marketplace his support for the HLF fraud. Defendant's purchase of stock and public disclosure thereof affirmatively assists and helps conceal the HLF fraud.

### *Defendant's Motive for Aiding and Abetting Herbalife is Revenge*

19. Defendant's motivation for aiding and abetting the HLF fraud stems from a decade-old feud with a one-time business partner named William Ackman. When Defendant failed to fulfill his duties under a contract with Mr. Ackman, Mr. Ackman filed suit against Defendant and was successful in receiving judgment against him. Defendant has remained angry

and bitter at Mr. Ackman to this day and has waited for an opportunity to vindictively punish Mr. Ackman.

20.  On the morning of December 20, 2012, Mr. Ackman made a public presentation detailing the HLF fraud. Mr. Ackman also disclosed that his investment firm has taken a substantial short position in HLF as a result of performing over a year and half of research and analysis on the company. Mr. Ackman's presentation included legal analysis provided directly by Mr. Ackman's attorney.

21.  As disclosed in Defendant's February 14, 2013, Schedule 13D, that very same day, December 20, 2012, Defendant began purchasing shares of HLF. Prior to Mr. Ackman's presentation, Defendant was not an investor in HLF, nor had he ever discussed it publicly. It is believed he barely even knew HLF existed and had no knowledge whatsoever of its business. However, when Defendant learned that Mr. Ackman had taken a substantial short position in HLF, he immediately began scheming a way to seek retaliation against Mr. Ackman for Mr. Ackman's successful judgment against Defendant years ago.

22.  As discussed above, Defendant's scheme to try and punish Mr. Ackman has included and continues to include the illegal act of aiding and abetting a fraud. Defendant is a very wealthy man who believes he is above the law. He believes he is better than everyone else because he is a multi-billionaire who can hire minions of staff and attorneys to do his bidding. In this case, he seeks to settle a score with Mr. Ackman and he is wiling to do any and everything to accomplish that goal, including violating the law by aiding and abetting a fraud.

Ravicher v. Icahn   March 13, 2013
COMPLAINT   Page 8

### *Defendant's Illegal Conduct Has Injured Plaintiff*

23. Knowing that HLF is a fraudulent pyramid scheme, Plaintiff has established and maintains a substantial short position in HLF stock. By aiding and abetting the HLF fraud, including by publicly promoting and propping up the share price of HLF as part of his vendetta against Mr. Ackman, Defendant has illegally caused the HLF share price to be unjustifiably inflated, which has negatively impacted the value of Plaintiff's investment.

24. But for Defendant's conduct, Plaintiff's investment in a short position in HLF would be worth substantially more. Defendant has even admitted that such is his intended result, by stating on public television that he hopes to create the "greatest short squeeze of all time" in HLF. Thus, Defendant's illegal conduct is both an actual and proximate cause of Plaintiff's injury.

### COUNT I

### Against Defendant for Aiding and Abetting a Fraud

25. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

26. Defendant has aided and abetted the HLF fraud, and continues to do so, by publicly promoting and propping up the share price of HLF with knowledge of HLF's fraudulent activities.

27. Plaintiff has been damaged, and continues to be damaged, thereby.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests this Court enter judgment as follows:

A. Permanently enjoin Defendant from continuing to aid and abet the HLF fraud in any manner, including by publicly promoting or propping up the share price of HLF.

B. Order Defendant to divest himself and all entities he controls of all beneficial ownership of shares or shares underlying call options obtained during the period of Defendant's illegal conduct, including at least all shares and options obtained on or after December 20, 2012.

C. Award Plaintiff his damages from Defendant's aiding and abetting the HLF fraud.

D. Award Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses.

E. Award such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims so triable.

Dated: March 13, 2013  
New York, New York

Respectfully Submitted,

LAW OFFICES OF DANIEL B. RAVICHER

*/s/ Daniel B. Ravicher*  
Daniel B. Ravicher  
1375 Broadway, Suite 600  
New York, NY 10018  
(646) 470-2641